# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

JUAN ESTRADA                                                                    PETITIONER

v.                            NO. 2:05CV00321 SWW/HDY
                              NO. 2:06CV00165 SWW/HDY

LINDA SANDERS, Warden, FCI                                          RESPONDENT
Forrest City, Arkansas

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following findings and recommendation have been sent to United States

District Judge Susan Webber Wright.  Any party may serve and file written objections to

these findings and recommendation.  Objections should be specific and should include

the factual or legal basis for the objection.  If the objection is to a factual finding,

specifically identify that finding and the evidence that supports your objection.  An

original and one copy of your objections must be received in the Office of the United

States District Court Clerk no later than eleven (11) days from the date of the findings

and recommendation.  The copy will be furnished to the opposing party.  Failure to file

timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite 402
Little Rock, Arkansas 72201-3325

DISPOSITION

STATE COURT PROCEEDINGS.   In August of 1994, petitioner Juan Estrada ("Estrada") discharged a firearm for the purpose of committing murder.  See Document 26, Exhibit at 12.  The incident resulted in his indictment in April of 1995 in Hidalgo County, Texas, District Court with attempted murder.  See Id.  In April of 1997, he entered a plea of nolo contendere to the charge.  See Document 26, Exhibit at 13-14. The trial judge "deferr[ed] further proceedings … without entering an adjudication of guilt and [placed Estrada] on community supervision."  See Document 26, Exhibit at 13. The trial judge reserved the right, though, to "enter an adjudication of guilt, pronounce sentence and punish [Estrada] accordingly."  See Document 26, Exhibit at 14.  Estrada satisfactorily fulfilled the terms of his community supervision and then sought an order terminating any further community supervision obligations.  His motion was granted in May of 1999.  The order granting his motion contained, in part, the following provisions:

> That the original sentence imposed is hereby amended or modified, if necessary, to conform to the community supervision period, and that Defendant is hereby DISCHARGED from community supervision; …
>
> …
>
> Proof of the conviction or plea of guilty shall be made known to the judge should the Defendant again be convicted of any criminal offense, …

See Document 26, Exhibit at 19.

FEDERAL COURT PROCEEDINGS.  At some point thereafter, Estrada was charged by indictment in the United States District Court for the Southern District of Texas with two drug trafficking offenses.  He eventually pleaded guilty to one count of "possession with intent to distribute 353 kilograms of marijuana."  See United States v. Estrada, 2001 WL 1751408 at 1 (5th Cir. 2001).   A pre-sentence investigative report containing information about the Hidalgo County, Texas, proceeding was then prepared; the Hidalgo County, Texas, proceeding was "counted as a conviction and sentence under the sentencing guidelines."  See Document 16-2, Declaration of James D. Crook at 3.  In January of 2001, Estrada was sentenced for the drug trafficking offense to ninety-six months in the custody of the Federal Bureau of Prisons ("BOP").  He appealed the imposition of his sentence to the United States Court of Appeals for the Fifth Circuit, but the sentence was affirmed.

BOP CUSTODY.  Estrada began serving his federal sentence in the custody of the BOP and, by October of 2004, had come to be housed at the Federal Correctional Institution in Three Rivers, Texas.  In October of 2004, he was notified that he met the admission criteria for the BOP Residential Drug Abuse Program ("RDAP").  See Document 16-2, Exhibit at 4.[1]  He was also notified that he was provisionally eligible for early release consideration.  See Id.  The notice contained the following representation:

---

[1]

The RDAP is a voluntary drug abuse treatment program that, in certain instances, rewards a prisoner who successfully completes the program with a reduction in his sentence.

> According to PSI, Estrada was convicted of Attempted Murder in [a] 1994 shooting.  He was sentenced to deferred adjudication, which he appears to have successfully completed.  <u>This essentially erases the conviction</u>.  <u>Case referred for legal review</u>.  <u>Legal review concluded that this conviction does not disqualify Estrada</u>.  PSI also reports Estrada is the prime suspect in a 1982 shooting death but he was never arrested or charged.  Legal review concluded that Estrada is eligible for early release.

<u>See</u> <u>Id</u>.  [Emphasis added].

Estrada subsequently came to be housed at the Federal Correctional Institution in Forrest City, Arkansas.  It was there that he entered the RDAP.  In December of 2005, after completing the RDAP, he was notified that he was not provisionally eligible for early release consideration.  <u>See</u> Document 16-2, Exhibit at 7.  The reason given for the denial of early release consideration was his "prior conviction."  <u>See</u> <u>Id</u>.

<u>ADMINISTRATIVE PROCEEDINGS</u>.  Estrada then filed a series of administrative grievances.   They generally appear to involve one of two matters: first, a direct challenge to the denial of his right to early release consideration; and second, his right to BOP documents generated in connection with his participation in the RDAP and his request for early release consideration.  With regard to the former, Estrada began the administrative process by seeking an informal resolution of the grievance.  His request was denied in December of 2005.  He was given the following reason for the denial: "Legal Review states that you are not eligible for early release."  <u>See</u> Document 35 at 24.  Estrada then appealed to respondent Linda Sanders ("Sanders").  She denied his appeal in December of 2005 and offered the following reason for doing so:

This is in response to your Request for Administrative Remedy received December 19, 2005, in which you contend you were unjustly denied the 3621(e) Early Release Benefit.

For relief, you request that you be granted the 3621(e) Early Release.

A review of your request and consultation with Bureau of Prisons Legal Staff determined you are not eligible for a 3621(e) Early Release as a result of your conviction for attempted murder.

See Document 35 at 22.   Estrada appealed Sanders' response to the BOP Regional Director.  In March of 2006, the Regional Director denied Estrada's appeal and offered the following reasons for doing so:

You are appealing the Warden's response to your complaint you were erroneously determined to be ineligible for sentence reduction under the provisions of 18 U.S.C. ... 3621(e).  You claim this determination was based on the erroneous conclusion that you have a prior conviction in Texas for Attempted Murder.  You assert that the prosecution for Attempted Murder resulted in a deferred adjudication, and therefore cannot be considered a conviction.  You request a reconsideration of your case, to result in a determination that the prosecution for Attempted Murder does not affect your eligibility for sentence reduction.

Review of this matter reveals in 1994 a prosecution was commenced against you for Attempted Murder.  The conduct in question involved you being one of two individuals who fired multiple shots into an occupied vehicle.  You pled nolo contendere, or no contest, and the court, after accepting your plea and determining that you had committed the offense, imposed a fine, restitution, and deferred adjudication in the form of two years of probation.  In accepting your plea, the court was required to ensure you had received all of the due process to which you were entitled. The court terminated your probation upon your successful completion thereof, and released you from your deferred adjudication.

Under Texas law, a person who successfully completed deferred adjudication is considered to have been convicted for several purposes. For example, such a person is unable to obtain certain state-issued licenses.  Furthermore, if that person is later convicted of a subsequent offense, the fact of the deferred adjudication is used to enhance the range of penalty, just as in the case of a regular conviction.

For this reason, the Bureau of Prisons considers you to have been convicted of Attempted Murder, which according to Program Statements 5330.10 Drug Abuse Program Manuel, Inmate, and 5162.04, Categorization of Offenses, makes you ineligible for consideration for sentence reduction under 18 U.S.C. … 3621(e).  Therefore, institution staff correctly determined you are ineligible.

It is also noted your criminal record reflects a Texas court sentenced you in an Involuntary Manslaughter matter involving a motor vehicle collision resulting in a death that occurred while you were intoxicated.  Given the information currently available, it is likely this conduct would also independently cause you to be ineligible for the sentence reduction incentive for drug treatment participation.

Based on the above, we concur with the Warden's decision.  Your appeal is denied.

In the event you are dissatisfied with this response, you may appeal …

See Document 43 at 20-21.  Estrada was indeed dissatisfied with the Regional Director's response and appealed the response to the BOP Office of National Inmate Appeals.  In June of 2006, Harrell Watts ("Watts"), an Administrator with the Office of National Inmate Appeals, denied Estrada's appeal and offered the following reasons for doing so:

This is in response to your Central Office Administrative Remedy in which you appeal the decision to remove and deny your previously deemed eligibility for early release consideration pursuant to 18 U.S.C. 3621(a).

-7-

18 U.S.C. 3621(e) provides the Director of the Bureau of Prisons the discretion to grant a sentence reduction of not more than one year upon the successful completion of the Residential Drug Abuse Program (RDAP). The exercise of this discretion is described in 28 C.F.R. 550.58 and Program Statement (P.S.) 5330.10, Drug Abuse Program Manual. P.S. 5330.10 states as an exercise of discretion vested in the Director of the Federal Bureau of Prisons, an inmate is not eligible for early release if he has a prior adult misdemeanor or felony conviction for homicide (including non-negligent manslaughter), forcible rape, robbery, aggravated assault, or child sexual abuse.

As indicated in your Presentence Investigation Report, your prior criminal history reflects an adult charge for Attempted Murder in 1994. Your offense behavior involved firing multiple shots into an occupied vehicle. On April 4, 1997, you pled nolo contendere. Your adjudication was deferred by the court, you were placed on probation for two years, and a fine and restitution were imposed. Upon successful completion, the court terminated your probation and released you from the deferred adjudication. Policy directs staff to consider sentences with a finding of withheld or deferred adjudication the same as if the Judge made a finding of guilt. In addition, all eligibility determinations are provisional and may change on the basis of new information regarding an inmate, a correction of staff error, or changes in policy. Therefore, we find the decision that you are precluded from receiving a sentence reduction to be consistent with the above-referenced statute, regulation, and program statement.

See Document 43 at 24. With the denial of the appeal, Estrada completely exhausted

his administrative remedies.[2]

---

[2]

On June 16, 2006, the undersigned recommended to United States District Judge Susan Webber Wright that Estrada's petition be denied and dismissed because he had failed to completely exhaust his administrative remedies. While that recommendation was pending before Judge Wright, Estrada offered evidence that he had completely exhausted his administrative remedies. Judge Wright asked the undersigned to review the evidence submitted by Estrada. The undersigned found the evidence persuasive and recommended to Judge Wright that the June 16, 2006, recommendation be declined and this proceeding referred for recommended disposition. Judge Wright agreed and has now referred this proceeding to the undersigned.

FEDERAL COURT SUBMISSIONS. Estrada commenced this proceeding in December of 2005 by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2241. In his petition, he advanced the following two claims: (1) the BOP "improvidently, unjustly and unfairly denied him eligibility for the 3621(e) early release after having successfully completed the [five hundred] hour RDAP," and (2) the BOP "discourage[d], frustrate[d], impair[ed], and impede[d]" his attempts to exhaust his administrative remedies. See Document 1 at 4. In support of the first assertion, he specifically alleged the following:

> Before I even applied to enter the 500 [hour] program of RDAP I was at Three Rivers, TX FCI and on October 12, 2004, the SOUTH CENTRAL REGIONAL OFFICE of the Bureau of Prisons found me eligible for early release. LEGAL REVIEW of the region notified me I [was] eligible. Hence, I entered the 500 [hour] RDAP Program, with the inducement that I was eligible. I, in good faith, then entered the program with the 3621(e) as the carrot. After having completed seven (7) whole months, over 400 [hours] of the program, the RDAP coordinator then maneuvered to convince the region LEGAL REVIEW faction that petitioner should not be eligible for the 3621(e) relief. The RDAP Coordinator then led petitioner to believe that it was the regional office that was questioning his eligibility. That was a ruse. The RDAP Coordinator then convinced the region[al office] that petitioner should not be eligible after the region[al office] once told petitioner he was. The RDAP Coordinator then stalled the petitioner and discouraged him from initiating the administrative remedy process and in effect frustrated his good faith attempts to do so.

> Petitioner had been given a release date of February 6, 2006 and had been accepted by the federal halfway house to enter it on that date. It was at that time that petitioner unequivocally had a liberty interest in being released under 3621(e) and to the halfway house on February 6, 2006. The RDAP Coordinator knew that the 500 [hour] RDAP program, and especially the 3621(e) early release, was the major inducement that caused petitioner to enroll in the ... program and to endure the painstaking rigors of the program, which petitioner did, in effect, endure successfully.

The RDAP Coordinator then stalled petitioner until two days after he graduated from the RDAP on December 5, 2005 until on December 7, 2005, petitioner was rudely notified that he would not go home on February 6, 2006 and was denied the 3621(e) relief.

The significant factor in denying petitioner the 3621(e) relief was a deferred adjudication from the State of Texas that eventually was DISMISSED. Texas and federal law of the FIFTH CIRCUIT in BLACK LETTER LAW state[s] that a deferred adjudication DISMISSED as petitioner's unequivocally [was] is NOT to be used as a conviction. …

See Document 1 at 4-5. Estrada asked that his halfway house release date be re-instated and that "the decision to deny him 3621(e) relief be overruled …" See Id. at 5.

Sanders filed a response to the petition. She maintained that Estrada was "fully advised that his original eligibility for early release consideration was provisional and could change." See Document 16 at 5. It changed when the BOP found that he was "ineligible for early release based on his prior attempted murder conviction." See Id.

Estrada thereafter submitted a reply to Sanders' response. His reply was instructive for two reasons. First, although he acknowledged that 18 U.S.C. 3621(e) contains discretionary language, the discretion is "limited solely on the contingency 'upon continued positive behavior and successful participation …'" See Document 23 at 3. He maintained that as long as he "continued positive behavior" and successfully completed the program, the BOP was obligated to honor its early release determination. Second, Estrada maintained that his nolo contendere plea was never adjudicated; thus, no finding of guilt was ever made and no conviction was ever entered.

The undersigned began a thorough review of the record in this proceeding.  In so doing, the undersigned was particularly interested in a representation contained in the memorandum authored by Watts.  In the memorandum, he represented the following: "Policy directs staff to consider sentences with a finding of withheld or deferred adjudication the same as if the Judge made a finding of guilt."  <u>See</u> Exhibit to Document 41.  Sadly, Watts did not offer a citation to support his representation.  The undersigned desired to know which policy specifically supported his representation, and for that reason, Sanders was directed to provide the undersigned with the precise citation.

Sanders thereafter submitted a response in which she cited the undersigned to BOP Program Statement 5100.08.  The program statement, entitled <u>Inmate Security Designation and Custody Classification</u>, was adopted on September 12, 2006, and provided, in part, the following at Appendix A, Page 8: "For this Program Statement's purposes, sentences with a specific finding of 'withheld adjudication' will be considered the same as if the Judge made a finding of guilt."  <u>See</u> Document 55-2 at 2.  Sanders additionally noted the following in a footnote: "Prior to September of 2006, the reference could be found at Program Statement 5100.07, CN-2 1/31/2002, Appendix B, Page 5."  <u>See</u> Document 55-1 at 1.

The undersigned reviewed Sanders' response and BOP Program Statement 5100.08.  After doing so, the undersigned determined that Estrada should be accorded an opportunity to submit a reply to Sanders' response.  He was invited to do so.

Estrada accepted the invitation by filing a reply to Sanders' response.  This reply was instructive for a number of reasons.  First, he maintained that Program Statement 5100.08 was not adopted until September 12, 2006, and, as a result, "this could not possibly have been the Program Statement [Watts] was referencing as his memorandum was written on June 2, 2006."  <u>See</u> Document 58 at 2.  Second, Estrada maintained that he was sentenced in the Hidalgo County, Texas, proceeding to "deferred" adjudication, but Program Statement 5100.08 makes no mention of "deferred" adjudications.  Rather, it addresses "withheld" adjudications.  Third, he maintained that Program Statement 5100.08 "does not have anything to do with the RDAP or qualification for early release."  <u>See</u> Document 58 at 5.  Instead, the program statement "deals with Inmate Security Designation and Custody Classification."  <u>See</u> <u>Id</u>.  Last, he maintained the following:

> Estrada agreed, by signing all necessary forms, to [the] provisional conditions of the RDAP.  He complied in every way, and had been given settled expectation of early release.  He clearly understood his early release was provisional and conditioned on his conduct during RDAP … and aftercare.  He fully complied with all conditions and expected early release.  To now deny him this early release when previously granted violates BOP's standards as well as settled cases so cited herein.

<u>See</u> Document 58 at 7.

The undersigned has now had an opportunity to fully review the parties' numerous submissions.  On the basis of that review, the undersigned makes the following findings and recommendation.

ANALYSIS.  18 U.S.C. 3621(e)(2)(B) provides that "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a [residential substance abuse] treatment program may be reduced by [the BOP], but such reduction may not be more than one year from the term the prisoner must otherwise serve."  The BOP has published a regulation–28 C.F.R. 550.58–and a program statement–BOP Program Statement 5330.10, Drug Abuse Programs Manual–identifying the categories of inmates ineligible for early release consideration.  They both provide the following:

> As an exercise of the discretion vested in the Director of the [BOP], the following categories of inmates are not eligible for early release:
>
> …
>
> (iv) Inmates who have a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, aggravated assault, or child sexual abuse offenses;

28 C.F.R. 550.58(a)(1)(iv) and BOP Program Statement 5330.10, Chapter 6, Page 1.  The parties agree that the Hidalgo County, Texas, proceeding involved a "prior felony."  The parties' disagree, though, as to whether the Hidalgo County, Texas, proceeding involved a "conviction" for purposes of 28 C.F.R. 550.58 and BOP Program Statement 5330.10."[3]

---

[3]

At this juncture, the undersigned notes that attempted murder is not one of the offenses enumerated in 28 C.F.R. 550.58(a)(1)(iv) and BOP Program Statement 5330.10, Chapter 6, Page 1, that is, a conviction for attempted murder is not a "felony or misdemeanor conviction for homicide …"  The parties have devoted no attention to this question, and the undersigned will do likewise, save this footnote. It is reasonable that an attempt to commit one of the enumerated offenses would be considered in the same manner as the actual commission of the offense.  See BOP Program Statement 5162.04 at 7-8, Conspiracy, Attempt, and Similar Offenses Which Involve an Underlying Offense.

Before addressing the question of whether the Hidalgo County, Texas, proceeding involved a "conviction" for purposes of 28 C.F.R. 550.58 and BOP Program Statement 5330.10, the undersigned addresses three matters.  First, Estrada cites BOP Program Statement 5330.10, Chapter 6, Page 7 for the proposition that his eligibility for early release consideration hinges solely upon his "continued positive behavior and successful participation" in the RDAP.  Although the program statement provides such, the scope of the provision concerns the participant's conduct while in the RDAP; the provision does not concern his conduct that occurred prior to his entry into the custody of the BOP.

Second, Sanders cites BOP Program Statement 5100.08, Appendix A, Page 8 for the proposition that the BOP considers a finding of withheld adjudication to be the same as if a judge makes a finding of guilt.  The program statement provides such, but it appears to have little to do with the RDAP or early release consideration.  Instead, the program statement is entitled <u>Inmate Security Designation and Custody Classification</u> and "provides policy and procedure regarding the [BOP] inmate classification system." <u>See</u> BOP Program Statement 5100.08 at 1.  Were the representation contained in that program statement a part of 28 C.F.R. 550.58 or Program Statement 5330.10, the undersigned would give the representation conclusive effect and the resolution of this proceeding would be easy.  Because the representation is not a part of either, the undersigned will not give it conclusive effect but will simply consider it in answering the question at bar.

Third, liberally construing Estrada's <u>pro</u> <u>se</u> submissions, he appears to alternatively advance a breach of contract claim and a due process claim in support of his request for relief. If he is indeed attempting to advance a breach of contract claim, he has failed to show that a contractual relationship existed between the parties. If Estrada is attempting to advance a due process claim, his claim is without merit because he has failed to show that he has a liberty interest in the sentence reduction he seeks. See <u>Fristoe v. Thompson</u>, 144 F.3d 627 (10th Cir. 1998).

In turning to address the question at bar, the undersigned begins by reviewing what a finding of deferred adjudication actually involves. In <u>Davis v. State</u>, 968 S.W.2d 368, 369-370 (Tex.Crim.App. 1998), the Court of Criminal Appeals for the State of Texas provided the following insight:

> Deferred adjudication is a type of community supervision ( *née* probation). The procedures for deferred adjudication are set out in Code of Criminal Procedure Article 42.12, Section 5. For most offenses [footnote omitted], a judge may grant deferred adjudication by making certain findings after a defendant pleads guilty or nolo contendere. [Citation omitted]. The court defers further proceedings, and places the defendant on community supervision without entering an adjudication of guilt. [Citation omitted]. If the defendant violates a condition of community supervision, the court may proceed to adjudicate guilt and assess punishment. [Citation omitted]. A defendant reaps the main benefit of deferred adjudication if the period of community supervision is successfully completed without the judge's proceeding to adjudicate guilt. Then the proceedings are dismissed, the defendant is discharged, and the defendant "may not be deemed [to have] a conviction for the purposes of disqualifications or disabilities imposed by law for conviction of an offense." [Citation omitted].

-15-

There are, however, exceptions to the discharge after a finding of deferred adjudication, one of which is stated in Code of Criminal Procedure Article 42.12, Section 5(c)(1): "For any defendant who receives a dismissal and discharge under this section: (1) upon conviction of a subsequent offense, the fact that the defendant has previously received community supervision with a deferred adjudication of guilt shall be admissible before the court or jury to be considered on the issue of penalty; ..." See Id. at 370.

A finding of deferred adjudication and its consequences have been addressed by the federal courts in several different contexts.   For example, in Caldwell v. Quarterman, 2006WL 2861670 (U.S.S.Ct. May 1, 2006), the United States Supreme Court denied a petition for writ of certiorari from a judgment of the United States Court of Appeals for the Fifth Circuit.  In a written statement accompanying the denial, United States Supreme Court Justice John Paul Stevens noted that the request raised the question of "whether a Texas order of 'deferred adjudication probation' is a 'judgment' under the [Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA')]," see Id. at 1, thus triggering the one year limitations period codified in the AEDPA.  He opined that "[a]n order of deferred adjudication probation is not a conviction, and it is therefore not a 'judgment' under Texas law." See Id.  Thus, "such an order cannot be a 'judgment of a State court' within the strict terms of [the AEDPA]." See Id.  He nevertheless agreed that the request was properly denied because the result was consistent with Congress' intent to curb abuses and address problems of delay.

In <u>United States v. Hamilton</u>, 48 F.3d 149 (5th Cir. 1995), the United States Court of Appeals for the Fifth Circuit concluded that a finding of deferred adjudication was not a "conviction" within the scope of Federal Rule of Evidence 609, a rule permitting a witness to be questioned about a felony conviction or a conviction of a crime involving dishonesty or a false statement.   In so concluding, the Court of Appeals noted the following:

> The few Fifth Circuit cases touching on this issue have indicated that when adjudication of guilt is deferred, there is no "conviction."   <u>See</u> <u>United States v. Georgalis</u>, 631 F.2d 1199, 1203 (5th Cir.1980) (holding that Rule 609 was violated when prosecutor attempted to cross-examine defendant about his deferred adjudication for felony check fraud); <u>United States v. Dotson</u>, 555 F.2d 134, 135 (5th Cir.1977) (holding that defendant truthfully stated on firearm purchase form that he had no felony convictions, given the fact that adjudication of guilt was deferred and sentence suspended on his prior offense of felony receipt of a stolen car); <u>see</u> <u>also</u> <u>Martinez-Montoya v. I.N.S.</u>, 904 F.2d 1018 (5th Cir.1990) (holding that petitioner's prior guilty plea and deferred adjudication for forgery did not amount to a "conviction" within the meaning of the Immigration Reform and Control Act, 8 U.S.C. § 1255a).

<u>See</u> <u>Id</u>. at 153.

In <u>United States v. Stauder</u>, 73 F.3d 56 (5th Cir. 1996), the same Court of Appeals concluded that a finding of deferred adjudication could nevertheless be used for calculating a defendant's base offense level under the United States Sentencing Guidelines ("Sentencing Guidelines").   The result in that case, though, appears to have turned upon the following provisions of the Sentencing Guidelines:

The base offense level for a defendant convicted of a firearm offense is based on the number of certain types of prior felony convictions. U.S.S.G. 2K21.1. Section 2K2.1(a)(4)(A) provides for a base offense level of 20 if the defendant "had one prior felony conviction of either a crime of violence or a controlled substance offense;" Stauder concedes that aggravated assault (his Texas offense) is a crime of violence.

The commentary to 2K2.1 refers to application note 3 to 4B1.2 for the definition of "prior felony conviction(s)." U.S.S.G. 2K2.1, comment (n.5). That note defines a "prior felony conviction" as "a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. 4A1.2, comment (n.3).

The commentary to 2K2.1 provides also that, "[f]or purposes of determining the number of … convictions under [2K2.1(a)(4)(A)], count any such prior *convictions* that receives points under 4A1.1 (Criminal History Category)." U.S.S.G. 2K2.1(a)(4)(A), comment (n.5) (emphasis added). The definitions and instructions for computing criminal history state that "[a] diversionary disposition resulting from a finding or admission of guilt … is counted as a sentence under [Sentencing Guideline] 4A1.1(c) *even if a conviction is not formally entered* …" U.S.S.G. 4A1.2(f) (emphasis added).

… Although 2K2.1 uses the term "conviction," it refers specifically to the criminal history provisions, which, as stated, include deferred adjudications such as Stauder's in calculating a defendant's criminal history score.

See Id. at 57 [emphasis in original]. In a footnote, the Court of Appeals in United States v. Stauder discounted the analysis in United States v. Hamilton and the line of cases cited therein, e.g., United States v. Dotson and Martinez-Montoya v. I.N.S., because "those cases did not involve the interpretation of U.S.S.G. 2K2.1." See Id. at n.1.

In <u>United States v. Valdez-Valdez</u>, 143 F.3d 196 (5thCir. 1998), the same Court of Appeals had another opportunity to consider a finding of deferred adjudication in the context of a different section of the Sentencing Guidelines.  The case differed from <u>United States v. Stauder</u> in one significant respect: the Sentencing Guideline at issue in <u>United States v. Valdez-Valdez</u>, <u>i.e.</u>, 2L1.2, the Sentencing Guideline governing the sentence imposed for unlawfully entering or remaining in the United States, "does not expressly direct the sentencing court to consider prior adjudications regardless of whether a prison term for the adjudication is suspended." <u>See</u> <u>Id</u>. at 203.  The Court of Appeals nevertheless concluded that a finding of deferred adjudication could be used for calculating a defendant's sentence under 2L1.2, noting the following:

> We have held in the context of other guidelines that a Texas "deferred adjudication" should be considered either a prior "conviction" or prior "sentence."  We recognize that 2L1.2(b)(1), unlike other guidelines previously considered, does not expressly direct the sentencing court to consider prior adjudications regardless of whether a prison term for the adjudication is suspended.  Even so, we perceive no good reason to depart from our previous positions addressing a Texas "deferred adjudication" and therefore hold that such a disposition may be counted as a "conviction for a felony" under 2L1.2(b)(1).  [Footnote omitted].

<u>See</u> <u>Id</u>. at 202-203.  In a footnote, the Court of Appeals in <u>United States v. Valdez-Valdez</u> again discounted the analysis in <u>United States v. Hamilton</u> and the line of cases cited therein, finding the analysis "unavailing in the context of interpreting the [Sentencing Guidelines]." <u>See</u> <u>Id</u>. at 203 n.42.

The undersigned acknowledges that it is not an open-and-shut question as to whether the Hidalgo County, Texas, proceeding involved a "conviction" for purposes of 28 C.F.R. 550.58 and BOP Program Statement 5330.10.  As evidence of that fact, one need not look any farther than the documents generated by the BOP in attempting to determine whether Estrada was eligible for early release consideration.  The initial legal review conducted by the BOP determined that the Hidalgo County, Texas, proceeding did not disqualify him from early release consideration.  On the basis of that representation, he entered the RDAP.  For some reason not apparent from the record, the determination that he was eligible for early release consideration changed.  Sadly, it changed only after he had successfully completed the RDAP.  In the series of administrative reviews, the position of the BOP was steadfast: he was ineligible for early release consideration.

The cases cited above are instructive in that they identify instances in which a finding of deferred adjudication is not considered a "conviction" and circumstances when it is so considered.  The distinction between the line of cases appears to lie in whether consideration of the finding of deferred adjudication is necessary in making correctional decisions.  Consideration of a finding of deferred adjudication is not necessary in determining when a limitations period commences nor is it necessary in gauging the truthfulness of a witness.  Consideration of a finding of deferred adjudication, though, is necessary in formulating a fair and just period of incarceration.

Are the facts of this proceeding more like the former or latter line of cases?  The undersigned is convinced that the facts of this proceeding are more like the latter line of cases, that is, consideration of a finding of deferred adjudication is necessary in making a correctional decision, specifically, in formulating a fair and just period of incarceration.  The BOP should be entitled to consider a finding of deferred adjudication in determining who should, and who should not, be eligible for early release consideration.  The BOP considers a finding of deferred adjudication in making inmate custody classifications, <u>see</u> BOP Program Statement 5100.08, and this proceeding presents a somewhat similar situation, <u>i.e.</u>, what factors the BOP may consider in identifying a class of inmates for participation in, and benefitting from, BOP programs.

The foregoing finding is consistent with a number of clear teachings.  First, "[a]fter a district court sentences a federal offender, the Attorney General, through [the] BOP, has the responsibility for administering the sentence."  <u>See</u> <u>United States v. Wilson</u>, 503 U.S. 329, 335 (1992).  Second, [w]hen an eligible [inmate] successfully completes drug treatment, the [BOP] ... has the authority, **but not the duty**, both to alter the [inmate's] conditions of confinement and to reduce his term of imprisonment."  <u>See</u> <u>Lopez v. Davis</u>, 531 U.S. 230, 241 (2001).  [Emphasis added].  Last, as the foregoing reflects, the BOP has "substantial discretion in determining who is eligible for early release upon completion of the drug treatment program and how early the release should be."  <u>See</u> <u>United States v. Lopez-Salas</u>, 266 F.3d 842, 847 (8th Cir.2001).

-21-

On the basis of the foregoing, the undersigned is convinced that the BOP could properly construe the Hidalgo County, Texas, proceeding as involving a "conviction" for purposes of 28 C.F.R. 550.58 and BOP Program Statement 5330.10.   Given that construction, the BOP could properly conclude that Estrada was ineligible for early release consideration.  The undersigned therefore finds no merit to his assertion that the BOP "improvidently, unjustly and unfairly denied him eligibility for the 3621(e) early release after having successfully completed the [five hundred] hour RDAP."   See Document 1 at 4.[4]

CONCLUSION.  The undersigned recommends that Estrada's petition be denied and dismissed.   All requested relief should be denied.   Judgment should be entered for Sanders.

2:06CV00165.  In July of 2006, Estrada commenced a separate proceeding by filing a complaint pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), in which he sought monetary damages from several of the BOP officials involved in denying him eligibility for early release consideration.   That proceeding was subsequently consolidated with the proceeding at bar and referred to the undersigned.  Given the findings and recommendation now made by the undersigned, 2:06CV00165 should also be denied and dismissed; all requested relief should be denied.

---

[4]

There is also no merit to his assertion that the BOP "discourage[d], frustrate[d], impair[ed], and impede[d]" his attempts to exhaust his administrative remedies.  See Document 1 at 4.

DATED this __25___ day of __October____, 2006.


_____
                                UNITED STATES MAGISTRATE JUDGE